**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Russell Alan Gout, et al.,

Plaintiffs,

v.

24HR Homecare LLC, et al.,

Defendants.

No. CV-21-00852-PHX-DLR

**ORDER**

Before the Court are two motions: Defendants' Amended Rule 702 Motion in Limine to Exclude Testimony of Medical Examiner Lesley E. Wallis, D.O. (Doc. 100), and Defendants' Amended Motion for Partial Summary Judgment on Plaintiffs' Wrongful Death Claim (Doc. 101), both of which are fully briefed (Docs. 103, 107, 108, 109).[1] Because these motions are interrelated, the Court will address them together. For the following reasons, the Court denies both motions.

**I. Background**

Plaintiffs allege that the decedent, Maxine Gout, died as a result of a fall on July 28, 2019. They claim that Gout struck her head and suffered a subdural hematoma, eventually leading to her death on October 6, 2019. Plaintiffs disclosed as a causation expert Dr. Wallis, a Medical Examiner for Maricopa County, who opined that Gout died from

[1] Oral argument is denied because the issues are adequately briefed, and oral argument will not assist the Court in reaching its decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

"complications of blunt force trauma." (Doc. 100-7 at 2.) Defendants move, pursuant to Federal Rule of Evidence 702, to exclude Dr. Wallis' opinion. (Doc. 100.) Defendants also move, pursuant to Federal Rule of Civil Procedure 65(b), for partial summary judgment on Plaintiffs' wrongful death claim, arguing that Plaintiffs cannot meet their burden of proof because they failed to disclose any admissible expert opinion establishing proximate cause. (Doc. 101.)

**II. Defendants' Rule 702 Motion to Exclude Dr. Wallis' Testimony**

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. A witness who is qualified as an expert may testify in the form of an opinion if the proponent demonstrates to the court that it is more likely than not that:

> (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A trial court functions as a "gatekeeper," excluding expert opinions if they do not meet the requirements of relevance and reliability under Rule 702. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). A court accomplishes this by making a preliminary determination that an expert's testimony is both relevant and reliable. *Id.* at 585–95. Rejection of expert testimony, however, remains "the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note (2000 amendments).

The Court has latitude in deciding how to determine whether an expert's opinion meets the requirements of Rule 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999). The Court "*may* consider one or more of the specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But . . . the test of reliability is flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts in every case." *Id.* Here, the Court finds Plaintiffs have met their burden of establishing by a preponderance of the evidence that Dr. Wallis' opinions meet the requirements of Rule 702.

Defendants argue that Dr. Wallis' opinion is based on insufficient facts and data. The Court disagrees. The parties do not dispute Gout had a number of ailments and co-morbidities in the months leading up to her death. (*See* Doc. 100 at 3; Doc. 103 at 15.) Dr. Wallis opined that Gout developed a large right frontal subdural hematoma as a result of a fall she suffered in July 2019. (Doc. 103-5 at 23.) Gout then underwent a right frontal craniotomy for subdural evacuation and later received a ventricle peritoneal shunt. (*Id.*) From that point forward, Gout's health declined, ultimately leading to her death. (Doc. 103-5 at 22.) Because Gout never "returned to baseline" following her July 2019 fall, Dr. Wallis concluded that Gout died from complications arising from the blunt force head trauma, with contributory factors of hypertensive cardiovascular disease and diabetes mellitus. (Doc. 103-5 at 22, 41; Doc. 100-7.)

To draw this opinion, Dr. Wallis relied on Gout's medical records, subpoenaed by the Maricopa County Medical Examiner's Office, as well as the Preliminary Investigative Report generated by Sam McDonald, an investigator with the same office. (Doc. 103-5 at 13–18.) During her deposition, Dr. Wallis testified that, generally, when a "case [is] not admitted"—in other words, the decedent is not physically admitted into the Medical Examiner's facility for external examination or a full autopsy—the medical examiner will determine cause of death by reviewing the decedent's subpoenaed medical records. (Doc. 103-5 at 13–14.) That is what Dr. Wallis did here. The Medical Examiner's Office subpoenaed Gout's medical records, including records from St. Joseph's Hospital, Hospice of the Valley, and the Gardens of Scottsdale. (Docs. 103-2, 103-3.) These documents contained consultation records, radiology records, Gout's pertinent medical history, and information about Gout's condition in the weeks prior to her death. (Doc. 103-5 at 33; Doc. 100-5, 100-6; Doc. 103-6; Doc. 103-7.) And the medical history contained in these records accounts for Gout's pre-existing illnesses, such as diabetes and hypertension, Gout's May 2019 ruptured aneurysm, and her July 2019 subdural hematoma. (*See e.g.*, Doc. 103-6.) Dr. Wallis relied on these medical records and the Preliminary Investigative Report to draw

her opinion. (Doc. 103-5 at 21.) Thus, the Court finds that Dr. Wallis based her conclusion on sufficient facts and data.

Defendants fault Dr. Wallis for not reviewing specific medical records from before Gout's July 28, 2019, fall and for not performing an examination or autopsy of the body. (Doc. 100 at 9–10.) These arguments go to the weight, not the admissibility, of Dr. Wallis' opinion. *In re Toyota Motor Corp Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litit.*, 978 F. Supp. 2d 1053, 1073 (C.D. Cal. 2013) ("[Defendant's] challenges regarding all of the materials that [expert] did not review go to weight, not admissibility."); *Silva v. Chung*, No. 15-00436, 2019 WL 2195201, at *2 (D. Haw. May 21, 2019) ("A physical examination of the decedent is not required for an expert to be permitted to testify as to cause of death."); *Williams v. Daszko*, No. 2:14-cv-1248, 2018 WL 2684314, at *6 (E.D. Cal. June 5, 2018) (holding that medical expert opinions that do not include the expert's physical examination of the patient remain "based on sufficient facts and data" and that challenges to such opinions "go to weight, not admissibility").

Defendants also contend that Dr. Wallis' methods are unreliable because she did not "conduct a differential diagnosis to rule out all of the other known health conditions that caused or contributed to Ms. Gout's death." (Doc. 100 at 8.) The Court disagrees. Although running a differential diagnosis might improve reliability, the failure to do so does not render the opinion categorically unreliable. *See Allen v. American Cap. Ltd.*, 287 F. Supp. 3d 763, 789–90 (D. Ariz. 2017) ("[F]ailure to rule out every alternative cause is not required. . . . A physician's failure to rule out the entire possible universe of sources of an individual's malady goes to the weight the jury gives the testimony, and not to the admissibility of the expert's opinion.") (citations omitted). "[W]hen a doctor offers a reasonable medical opinion, grounded in their relevant experience, appropriate analysis, and in the medical literature, their opinions should not be excluded." *Id.* at 790.

In arguing otherwise, Defendants rely on *Claar v. Burlington N. R.R.*, in which the Ninth Circuit affirmed the district court's exclusion of expert witnesses, in part, because the experts did not rule out other possible causes of the plaintiffs' ailments. 29 F.3d 499,

502–03 (9th Cir. 1994). However, the experts in that case neither explained the basis for their conclusions nor considered the possibility that the plaintiffs' injuries pre-existed the chemical exposure. *Id.* Here, Dr. Wallis explained why she concluded that Gout died from complications arising from blunt force head trauma. (Doc. 103-5 at 21–23; Doc. 100-7.) Furthermore, unlike the experts in *Claar*, Dr. Wallis was aware of, considered, and incorporated into her findings Gout's pre-existing conditions and medical history. (Doc. 103-5 at 49–50; Doc. 100-6.) Dr. Wallis, qualified as a forensic and anatomic pathologist and with over 19 years of experience as a medical examiner (*see* Doc. 103-5 at 7–8), offered a reasonable medical opinion grounded in her relevant experience and appropriate analysis of Gout's medical records. The perceived flaws in Dr. Wallis' opinions Defendants have identified are issues that can be addressed on cross-examination. But the Court will not exclude Dr. Wallis' testimony because it finds that Dr. Wallis based her opinion on sufficient facts and data and employed reliable methods in drawing her conclusion. Defendants' Amended Rule 702 motion is denied.

**III. Defendants' Motion for Partial Summary Judgment**

Defendants' motion for partial summary judgment is derivative of their Rule 702 motion. Defendants contend that Plaintiffs lack causation evidence because they believe Dr. Wallis' opinion is inadmissible. Because the Court disagrees with the predicate, Defendant's motion for partial summary judgment necessarily must be denied.

**IT IS ORDERED** that Defendants' Motion to Exclude Plaintiffs' Expert Witness Dr. Lesley E. Wallis (Doc. 100) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc. 101) is **DENIED.**

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that the parties shall appear for a telephonic trial scheduling conference on **October 12, 2023, at 2:30 p.m**. Call-in instructions will be provided via separate email.

Dated this 19th day of September, 2023.

Douglas L. Rayes
United States District Judge